**MARK K. SCHONFELD** (MS-2798)
**REGIONAL DIRECTOR**
**David Stoelting** (DS-0565)
**William Estes** (WE-4632)
**SECURITIES AND EXCHANGE COMMISSION**
Northeast Regional Office
3 World Financial Center, Room 4300
New York, NY  10281
(212) 336-0174 (Stoelting)
(212) 336-1324 (fax)
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------ x
SECURITIES AND EXCHANGE COMMISSION,          :
                                             :
                Plaintiff,                   :
                                             :
        -against-                            :
                                             :
PITTSFORD CAPITAL INCOME                     :
        PARTNERS, L.L.C.,                    :
PITTSFORD INCOME PARTNERS II, L.L.C.,        :
PITTSFORD INCOME PARTNERS III, L.L.C.,       :
PITTSFORD INCOME PARTNERS IV, L.L.C.,        :
PITTSFORD INCOME PARTNERS V, L.L.C.,         :    06 Civ._____ (    )
JEFFERSON INCOME PARTNERS, L.L.C.,           :
PITTSFORD CAPITAL, L.L.C.                    :
PITTSFORD CAPITAL MORTGAGE                   :    COMPLAINT
        PARTNERS, L.L.C.,                    :
PITTSFORD CAPITAL GROUP, Inc.,               :
MARK PALAZZO, and                            :
EDWARD TACKABERRY,                           :
                                             :
                Defendants,                  :
                                             :
and                                          :
                                             :
COMMUNICATE WIRELESS, L.L.C,                 :
MONROE WIRELESS, L.L.C., and                 :
MICHAEL LATINI,                              :
                                             :
                Relief Defendants.           :
                                             :
------------------------------------------------------------x
```

Plaintiff Securities and Exchange Commission brings this action to halt fraudulent offerings of securities by defendants Pittsford Capital Income Partners, L.L.C. ("Pittsford I"), Pittsford Income Partners II, L.L.C. ("Pittsford II"), Pittsford Income Partners III, L.L.C. ("Pittsford III"), Pittsford Income Partners IV, L.L.C. ("Pittsford IV"), Pittsford Income Partners V, L.L.C. ("Pittsford V"), Jefferson Income Partners, L.L.C. ("Jefferson"), Pittsford Capital, L.L.C. ("Pittsford Capital"), Pittsford Capital Mortgage Partners, L.L.C. ("Pittsford Mortgage"), Pittsford Capital Group, Inc. ("Pittsford Group"), Mark Palazzo ("Palazzo"), and Edward Tackaberry ("Tackaberry") (collectively, the "Defendants"), and relief defendants Communicate Wireless, L.L.C. ("Communicate Wireless"), Monroe Wireless, L.L.C. and Michael Latini ("Latini") (the "Relief Defendants"), and alleges as follows:

## SUMMARY OF ALLEGATIONS

1.    The Commission brings this emergency action to stop an ongoing securities fraud which has raised approximately $15 million from at least 275 investors, most of them senior citizens living in the Rochester area. The fraud concerns unregistered offerings of securities in the form of promissory notes and investment units issued by Pittsford I, Pittsford II, Pittsford III, Pittsford IV, Pittsford V, and Jefferson (collectively, the "Pittsford Issuers"). The Pittsford Issuers are owned and managed by Palazzo and Tackaberry, either individually or through Pittsford Capital, Pittsford Mortgage, and Pittsford Group which also are owned by Palazzo and Tackaberry. The Pittsford Issuers are real estate investment companies, which offered investors promissory notes and investment units that would provide returns of between 9% and 12.22% per annum. The Pittsford Issuers represented to investors that proceeds of the

offerings would be used for loans to make loans secured by mortgages on real property at an interest rate of 16% per year.  Jefferson's offering materials also disclosed that Jefferson would engage in bridge lending for real property.

      2.      The Pittsford Issuers, Palazzo and Tackaberry have misused investor funds and have misrepresented and failed to disclose material facts to investors.  First, in 2005, Tackaberry and Palazzo did not disclose to investors that they transferred $2.4 million in investor funds to Communicate Wireless, a now defunct cellular phone company unrelated to real estate, in which Tackaberry and Palazzo had ownership interests.  Second, in 2005, the Defendants did not disclose that they had transferred hundreds of thousands of dollars to Palazzo from Pittsford Mortgage's bank account.  Third, without investors' consent, Tackaberry and Palazzo merged Pittsford I-V into a previously undisclosed entity, Pittsford Mortgage, commingling all of the investors' funds, and subjecting Pittsford I-V to each others' previously undisclosed financial risks.  Fourth, contrary to direct representations in the offering memoranda, the Defendants have used money raised from the most recent Jefferson offering to fund the operations of, and make sporadic principal and interest payments to, Pittsford I-V investors.  Fifth, the Private Placement Memoranda for Pittsford I-V tout the appointment of a "servicing agent" to represent the interests of investors; however, Tackaberry and Palazzo never provided this agent with any of the necessary information and have not communicated with the agent for over four years, even though more than a dozen investors have filed lawsuits following events of default.  Sixth, investors' funds are at severe risk because liabilities to investors greatly exceed the assets of the Pittsford Issuers and Pittsford Mortgage.  Finally, litigation brought by several investors, as recently as the last month, further

threatens to deplete investor assets.

3.      By virtue of the conduct alleged herein, the Pittsford Issuers, Pittsford
Capital, Pittsford Mortgage, Pittsford Group, Palazzo, and Tackaberry, directly or
indirectly, singly or in concert, have engaged and are engaging in acts, practices and
courses of business, that constitute violations of 17(a) of the Securities Act of 1933 (the
"Securities Act"), 15 U.S.C. 77q(a), and Section 10(b) of the Securities Exchange Act of
1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5
thereunder.

## JURISDICTION AND VENUE

4.      The Commission brings this action pursuant to the authority conferred upon it
by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d)(1) of the
Exchange Act, 15 U.S.C. § 78u(d)(1), seeking to temporarily restrain, and preliminarily
and permanently enjoin the Defendants from engaging in the acts, practices and courses
of business alleged herein.  The Commission also seeks a final judgment ordering the
Defendants to disgorge their ill-gotten gains and to pay prejudgment interest thereon, and
ordering the Defendants to pay civil money penalties pursuant to Section 20(d) of the
Securities Act, 15 U.S.C. § 77t(d) and Section 21(d)(1) of the Exchange Act, 15 U.S.C. §
78u(d)(3).

5.      The Commission further seeks, as immediate relief, temporary and
preliminary restraining orders: (a) freezing the assets of the Defendants and the Relief
Defendants; (b) directing the Defendants and the Relief Defendants to provide
accountings; (c) providing for expedited discovery and preventing the destruction,
alteration or concealment of documents; and (d) appointing a receiver over the Pittsford

Issuers, Pittsford Capital, Pittsford Mortgage, and Pittsford Group.

6.   This Court has jurisdiction over this action, and venue lies in this District, pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Sections 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(e) and 78aa.  Venue is proper in the Western District of New York as the Pittsford Issuers, Pittsford Capital, Pittsford Mortgage, Pittsford Group, Palazzo, and Tackaberry, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of business alleged herein. A substantial part of the events and omissions giving rise to the Commission's claims occurred in the Western District of New York.  The Pittsford Issuers, Pittsford Capital, Pittsford Mortgage, Pittsford Group are New York companies headquartered in this District, received investor funds in this District, engaged in numerous real property loan transactions in this District using funds from the sale of unregistered securities, and used bank accounts serviced by banks in this District in connection with its business.  Palazzo and Tackaberry also reside in the Western District of New York.

## DEFENDANTS AND RELIEF DEFENDANTS

7.   **Pittsford I** is a New York limited liability company controlled by Palazzo and Tackaberry.  Pursuant to a Private Placement Memorandum dated June 17, 1996, Pittsford I offered $2 million in unregistered promissory notes in forty $50,000 units. The interest rate payable on the Pittsford I notes was 10% per year and 11% per year for purchasers of five or more notes.  These notes mature in ten years, when the principal amount becomes payable, although investors could require Pittsford I to prepay "subject to the availability of funds."  The Pittsford I offering proceeds were to be used to "hold

5

and collect [mortgage notes] and the interest on them and to reinvest the principal collected in similar notes."

8.     **Pittsford II** is a New York limited liability company controlled by Palazzo and Tackaberry.  Pursuant to a Private Placement Memorandum dated June 11, 1997, Pittsford II offered $3 million in unregistered promissory notes that were sold in sixty $50,000 units.  The Pittsford II notes were to pay interest at 10% per year and 12.20% to investors who purchased five or more notes.  These notes mature in five years, when the principal amount becomes payable, although Pittsford II "in its sole discretion" may extend the notes for an additional five years.  The offering proceeds were to be used "to purchase, hold and collect Mortgage Notes and the interest thereon and to reinvest the principal collected thereon in additional Mortgage Notes."  According to the Pittsford V Private Placement Memorandum, Pittsford II "was merged into" Pittsford I on January 1, 1999.

9.     **Pittsford III** is a New York limited liability company controlled by Palazzo and Tackaberry.  Pursuant to a Private Placement Memorandum dated February 5, 1998, Pittsford III offered $3 million in unregistered promissory notes consisting of sixty $50,000 notes.  The Pittsford III notes were to pay interest at 10% per year and 12.20% to investors who purchased five or more notes.  These notes mature in five years, when the principal amount becomes payable, although Pittsford III "in its sole discretion" may extend the notes for an additional five years.  The Pittsford III offering proceeds were to be used "to purchase, hold and collect Mortgage Notes and the interest thereon and to reinvest the principal collected thereon in additional Mortgage Notes."

10.     **Pittsford IV** is a New York limited liability company controlled by

Palazzo and Tackaberry. Pursuant to a Private Placement Memorandum dated November 6, 1998, Pittsford IV offered $3 million in unregistered promissory notes consisting of sixty $50,000 notes. The Pittsford III notes were to pay interest at 10% per year and 10.5% per year to investors who purchased three or more notes. These notes mature in five years, when the principal amount becomes payable, although Pittsford IV "in its sole discretion" may extend the notes for an additional five years. The Pittsford IV offering proceeds were to be used "to purchase, hold and collect Mortgage Notes and the interest thereon and to reinvest the principal collected thereon in additional Mortgage Notes."

11.     **Pittsford V** is a New York limited liability company controlled by Palazzo and Tackaberry. Pursuant to a Private Placement Memorandum dated August 23, 1999, Pittsford V offered $3 million in unregistered promissory notes consisting of sixty $50,000 Series B and Series C notes. The Pittsford V Series B notes were to pay interest at 10% per year and 10.5% to investors who purchased "three or four" such notes. The Series C notes pay interest at 9% per year. Pittsford V note holders may present their notes to the issuer for repayment of principal after one year, which Pittsford V will do but only if it has "sufficient funds" (Series C notes have a lower processing fee if presented for repayment). Unlike Pittsford II, III and IV, the note holders, as opposed to the issuer, can extend the maturity date an additional five years. The Pittsford V offering proceeds were to be used "to purchase, hold and collect Mortgage Notes and the interest thereon and to reinvest the principal collected thereon in additional Mortgage Notes."

12.     **Jefferson** is a New York corporation controlled by Palazzo and Tackaberry. Pursuant to a Private Placement Memorandum dated January 7, 2003,

Jefferson offered $6 million in unregistered securities consisting of 120 Class B Units at $50,000 per Unit. The Class B holders were entitled to net income allocations between 7% and 12% depending on the amount of money invested and at the "sole discretion" of Palazzo and Tackaberry. Class B holders were also entitled to redeem the Units after one year provided that Jefferson has "sufficient working capital and cash flow, which will be determined by [Jefferson] in its sole discretion." The offering proceeds were to be used "to acquire and hold Mortgage Notes secured by Mortgages on commercial real property (and, in limited circumstances, real property) and to engage in bridge and other lending with respect to real property."

13.     **Pittsford Capital** is a New York limited liability company with offices at 170 Office Parkway, Pittsford, New York. Pittsford Capital manages Pittsford I – V by originating and servicing mortgage loans to high-risk real estate developers. Palazzo and Tackaberry each own 50% of Pittsford Capital and control its operations.

14.     **Pittsford Mortgage** is a New York limited liability company with offices at 170 Office Parkway, Pittsford, New York, established by Palazzo and Tackaberry to receive and pay principal and interest to Pittsford I – V investors. Between 1998 through August 2000, Pittsford I – V were merged into Pittsford Mortgage. In 2003, Pittsford Mortgage commingled the bank accounts and mortgages of Pittsford I - V. Palazzo and Tackaberry own and control Pittsford Mortgage.

15.     **Pittsford Group** is a New York corporation formed in February 1994 with offices at 170 Office Park Way, Pittsford, New York. Pittsford Group received 2% of the Jefferson offering proceeds for organizing Jefferson. Pittsford Group is a holding company for a number of entities, including Pittsford Mortgage. Palazzo and Tackaberry

own and control Pittsford Group.

16.     **Mark Palazzo**, age 44, resides in Pittsford, New York, and is a co-owner of the Pittsford Issuers, Pittsford Mortgage, Pittsford Group, and Pittsford Capital.  He also had an ownership interest in, and was President of, Communicate Wireless.  Palazzo holds Series 6, 22, 24, 62, 63 and 65 securities licenses.  In June 2005, Palazzo voluntarily terminated his registration with VFinance Investments, Inc ("VFinance").  Palazzo is not currently associated with any registered broker-dealer, but from at least 1998 to 2005, he was associated with the following registered broker-dealers: Pittsford Capital Markets, Inc., Paramount Financial Capital Markets, Inc., Essex Capital Markets, Inc., VFinance, and New England Securities, Inc.

17.     **Edward Tackaberry**, age 54, resides in Pittsford, New York, and is a co-owner of the Pittsford Issuers, Pittsford Mortgage, Pittsford Group, and Pittsford Capital.  Tackaberry also had an ownership interest in Communicate Wireless.  Tackaberry is also part-owner and branch office manager of the Pittsford branch of Concord Equity Group, a registered broker-dealer.  Tackaberry holds Series 2, 7, 24, 63 and 65 securities licenses, and he was previously associated with other registered broker-dealers, including VFinance, Pittsford Capital Markets, Inc. and Essex Capital Markets, Inc.

18.     **Communicate Wireless**, a defunct cellular telephone company, is a New York limited liability company incorporated in October 2002 with former offices at 170 Office Park Way, Pittsford, New York.  Latini, Palazzo, and Tackaberry had ownership interests in Communicate Wireless and Palazzo was its President.  According to Latini, the former CEO of Communicate Wireless, Communicate Wireless had serious financial issues because its liabilities greatly exceeded its assets; and Communicate Wireless'

assets and liabilities were recently transferred to Monroe Wireless.

19.    **Monroe Wireless** is a New York limited liability company incorporated in February 2006 with offices at 170 Office Park Way, Pittsford, New York.  Monroe allegedly owns franchised outlets selling wireless communication devices.  Stephen Roehrig ("Roehrig"), a registered representative at the Pittsford branch of Concord Equity Group, is the principal of Monroe.

20.    **Michael Latini**, age 37, resides in Pittsford, New York.  Latini was the founder of Communicate Wireless.  On April 28, 2006, Latini filed for Chapter 7 bankruptcy seeking to discharge $2.4 million of debt that Communicate Wireless allegedly owes to Pittsford Mortgage that Latini personally guaranteed.

## FACTS

### The Fraudulent Offerings By the Pittsford Issuers

21.    From at least 1996 though 2004, the Pittsford Issuers have raised more than $15 million from at least 275 investors in New York through fraudulent offerings of securities in the form of promissory notes and investment units.  The Defendants conducted this unregistered offering using the telephone and mail delivery services.  The offering materials also provide for selling commissions of between 5% and 6% of the monies raised from investors, and management fees ranging from 1% to 4% of the principal value of the mortgage notes held by the Pittsford Issuers.  However, in Pittsford II, III and IV, investors were told that "[n]o payment of [the management fee] may be made by the [Pittsford Issuers] if before or after such payment, the [Pittsford Issuers'] negative [sic] net worth will be negative."  Pittsford II, III and IV also had organizational fees of 3.5% to 4% of the offering proceeds.

10

22.     In marketing to the general public, the Pittsford Issuers, Palazzo and Tackaberry promised investors that the promissory notes and investment units would provide monthly returns of between 9% and 12.22% per year.  The Private Placement Memoranda of the Pittsford Issuers disclosed that the offering proceeds would be loaned to high-risk borrowers at an interest rate of 16% per year, and these loans would be secured by mortgages on real property.  All of the securities issued by the Pittsford Issuers purportedly paid a defined rate of interest for the term of the note and would return the principal of the note upon the date of maturity.

23.     Promissory notes for Pittsford I had a ten year term, but gave the investor the right to require payment after five years subject to availability of funds.  Pittsford II – IV had five year terms that could be extended unilaterally by the issuer for another five years.  At the conclusion of the term, the principal would become due.  Pittsford V's promissory notes had five-year terms which could only be extended for another five year term by the promissory note holder.  In addition, Pittsford V's notes state that Pittsford V would use its "best efforts" to redeem promissory notes after one year on a "first come, first served basis," provided that "the Company has the funds" and "such repayment may take between 6-12 months."  Tackaberry and Palazzo touted this right in Pittsford V's marketing materials, by including the following statement in marketing materials sent to investors: "That's right we have built liquidity options into this investment, enabling investors to 'cash out' at any time."  The Jefferson investors could redeem their investment at any time following the one year anniversary of the closing of the offering.

24.     The Pittsford Issuers, Palazzo and Tackaberry disclosed that every loan made with the offering proceeds would be secured by a mortgage on real property.  The

Private Placement Memoranda disclosed the various types of mortgages the Pittsford Issuers might acquire, that the mortgage notes would be insured by a casualty insurance company, and that the Pittsford Issuers intended to obtain mortgages whose principal value would not be greater that 70% of the fair market value of the property.

25.     The Defendants have made numerous misrepresentations and omissions to investors concerning the Pittsford Issuers and their financial condition.  Among other things, the Defendants: (i) misrepresented that the proceeds of the offerings would be used exclusively to finance loans secured by mortgages on real property; (ii) failed to disclose to investors that the Defendants transferred $2.4 million in investor funds to Communicate Wireless, a company wholly unrelated to real estate, in which Tackaberry and Palazzo had ownership interests; (iii) failed to disclose that the Defendants transferred hundreds of thousands of dollars to Palazzo from Pittsford Mortgage's bank account; (iv) failed to disclose that without investors' consent, Tackaberry and Palazzo merged Pittsford I-V into a previously undisclosed entity, Pittsford Mortgage; (v) failed to disclose that the Defendants commingled all investors' funds and subjected investors to the financial risks of all the Pittsford Issuers' various offerings; (vi) misrepresented that money raised from the Jefferson offering would not be commingled with, or used to fund the operations of, the other Pittsford Issuers; and (vii)  misrepresented that a "servicing agent" would represent the interests of investors and provide this agent with information about defaults on investors' promissory notes.

26.     The Defendants targeted retirees and senior citizens when soliciting investors to purchase the Pittsford Issuers' securities.  A significant portion of the investors were retirees from large Rochester-based employers, including Eastman Kodak.

These retirees' and senior citizens' assets are at risk.

**The Transfer of Investor Funds to Communicate Wireless**

27.     Tackaberry and Palazzo transferred a substantial portion of investor funds to Communicate Wireless, an entity that Tackaberry, Palazzo, and Latini owned and controlled.  Communicate Wireless was a satellite and wireless cellular company that is now defunct.  The transfer of investor funds to Communicate Wireless contravened representations to investors that investor funds would be used for loans secured by mortgages on real property.  Communicate Wireless was not associated with any real estate investment.  In addition, the Defendants did not disclose to investors that they were using investor funds for a business in which they have a personal interest.

28.     On April 19, 2005, the Pittsford Issuers, through Pittsford Mortgage, purportedly loaned $2,195,000 to Latini as CEO and Palazzo as President of Communicate Wireless.  On May 5, 2005, the Pittsford Issuers purportedly loaned Communicate Wireless an additional $105,000.  On July 13, 2005, Pittsford Mortgage and Communicate Wireless entered into a new promissory note that replaced the previous two notes. Under the terms of the July 2005 note, Communicate Wireless agreed to pay Pittsford Mortgage 12% annual interest on $2,472,000 until the note matured on December 1, 2005.  Communicate Wireless also agreed to make a one time payment of $115,960 by July 20, 2005.  The notes were unsecured.

29.     In an attempt to conceal the transfer and make it appear as a loan secured by real property, Palazzo and Tackaberry recorded the transfer as mortgage principal and interest in Pittsford Mortgage's books and records.  In approximately January 2006, Tackaberry provided the Commission's Examination staff with a list of the Pittsford

Issuers' mortgage portfolio, which identified the Communicate Wireless transfer as an outstanding mortgage loan.

30.    According to Latini, Communicate Wireless used the loan from Pittsford Mortgage to pay down a loan from the United States Small Business Administration. This loan was unrelated to real property and was not secured by a mortgage on real property.  Communicate Wireless defaulted on the note by failing to make the one time payment due on July 20, 2005 and failing to make any payments by December 1, 2005, the maturity date.  On April 28, 2006, after the Commission's Enforcement staff began its investigation, Latini, the co-owner of Communicate Wireless, filed a personal bankruptcy petition seeking to discharge Communicate Wireless' debt to the Pittsford Issuers.

31.    Monroe Wireless took over the assets and liabilities of Communicate Wireless.  Roehrig, a former broker that Palazzo supervised, purports to own and control Monroe Wireless.  Roehrig is currently a registered representative working at the Pittsford branch of Concord Equity Group that Tackaberry owns and controls.  Roehrig has negotiated a license for Monroe Wireless with another telecommunications company, Wireless Zone, to open four franchised stores.

**The Transfers of Money to Palazzo**

32.    Between October 2004 and July 2005, Palazzo wrote checks to himself totaling $265,000, including a January 2005 check for $100,000 made out to Robert Leone, an attorney for Pittsford Mortgage, which Palazzo endorsed.  This $100,000 transaction is recorded in Pittsford Mortgage's general ledger as a loan to Palazzo.

33.    Pittsford Mortgage's general ledger shows an additional $115,500 in transfers to Palazzo from January 2005 through May 2005.  These transfers include: (i) a

January 6, 2005 payment in the amount of $5,000 entered as "due from Pittsford"; (ii) an

April 1, 2005 payment of $16,000 entered as "undeposited cash/loans"; (iii) an April 26,

2005 payment of $3,000 entered as "undeposited cash/loans"; and (iv) a May 26, 2006

payment in the amount of $91,500 entered as "mortgage interest receivable." None of

these insider transactions have been disclosed to the Pittsford Issuers' investors.

34.   In addition, records indicate a $50,000 transfer in September 2004 from

the Pittsford Issuers' bank account to Kanoodle.com, Inc. The Pittsford Issuers' general

ledger referenced the transfer as "Edward Tackaberry-Kanoodle."

**Misrepresentations Concerning the "Servicing Agent"**

35.   In the Pittsford I – V Private Placement Memoranda, the Defendants stated

that Pittsford I – V would retain an independent, third party agent ("Servicing Agent")

"on behalf of the Note Holders" and that they would provide the Servicing Agent with a

list of investors and their addresses, as well as periodic financial reports and prompt

written notification of any defaults to promissory note holders so the Servicing Agent

could call a meeting of the promissory note holders to see if they wanted to authorize him

to take legal action.

36.   James Morris, an attorney in Pittsford, New York, signed five letter

agreements with Palazzo to purportedly act as the Servicing Agent in exchange for $700

per year per company. Beginning in 1996, Pittsford I-V made payments to Morris.

Morris, however, stopped receiving payments in July 2001.

37.   In contravention of the stated terms in Pittsford I – V's offering

memoranda, Palazzo, Tackaberry, and Pittsford I – V never furnished Morris with a

listing of the names of each promissory note holder, their addresses or the amounts they

15

invested in principal.  Nor did Pittsford I – V ever provide Morris with any periodic financial reports.

38.    Starting in March 2004, Pittsford III and V began defaulting on the promissory notes.  Pittsford I - V, Pittsford Mortgage, Palazzo and Tackaberry, however, never informed Morris of any of the defaults.  In the fall of 2005, a lien was put on Pittsford V's assets so that individuals could collect on judgments they had obtained because Pittsford III and V had defaulted on their promissory notes, but Pittsford I - V, Pittsford Mortgage, Palazzo and Tackaberry did not inform Morris.  Despite the lien, in November 2005, the Defendants opened a new bank account in the same name as their primary account, and deposited $348,000 into the account.

39.    In 2002, Morris learned from investors, not Palazzo and Tackaberry, that Pittsford I – V was not making interest payments, and Morris attempted to get the names of investors from Tackaberry and Palazzo. The Defendants did not respond to Morris' requests, and did not provide him with the names of any investors.  Tackaberry and Palazzo also never informed him of a single default.

40.    Although the offering memoranda represent that Morris would act on behalf of investors, Palazzo and Tackaberry made sure that Morris never had the ability to effectively perform the duties appointed to him.  By not informing Morris of Pittsford I-V's defaults, Pittsford I – V, Pittsford Mortgage, Palazzo and Tackaberry concealed and perpetuated their fraud.

**Misrepresentations Concerning the Commingling of Investors' Funds**

41.    In March 2000, Palazzo and Tackaberry represented to investors that they

needed investors' approval to merge the Pittsford Issuers and Pittsford Mortgage.

Palazzo and Tackaberry, however, did not obtain investors' approval to merge the

companies and merged the companies without the investors' consent.

42.     Palazzo and Tackaberry did not disclose the differing financial risks

associated with each of the offerings if the companies were merged.  Each of the Pittsford

Issuer's offerings raised different amounts of money from a different number of

investors, and each held different mortgages with different risks of default.

43.     The Defendants did not disclose to each of the Pittsford Issuer's investors

that (i) all the offerings' funds would be commingled and (ii) the resulting risks

associated with combining the assets and liabilities of the various offerings.  In 2003,

Palazzo and Tackaberry consolidated the bank accounts of Pittsford I – V.

44.     Jefferson's Private Placement Memorandum stated that Jefferson would

deposit investor funds in Jefferson's name and investor funds "may not be commingled

with the funds of any Manager, Member, Officer or any Affiliate thereof."

45.     From April 2003 through April 2004, Jefferson raised $1,925,000 from

investors.  From April 2003 through December 2005, Jefferson commingled its investors'

funds with those of the Pittsford Issuers by transferring $1,695,000 to Pittsford

Mortgage's bank account.  During this period, Pittsford Mortgage transferred $463,046 to

Jefferson's bank account.

**Omission Concerning Tackaberry's Background**

46.     The Private Placement Memoranda for Pittsford I and II disclosed that

Tackaberry was Chief Executive Officer and Chairman of the Board of Directors of

Spikes Indoor Beach Volleyball & Floor Courts, Inc. ("Spikes"), and that Spikes had

filed for bankruptcy.  Subsequently, the Private Placement Memoranda for Pittsford III-V and Jefferson did not disclose that Tackaberry had been CEO and Chairman for a company that had filed for bankruptcy.

**Investors Are at Risk Because the Pittsford Issuers, Pittsford Mortgage and Pittsford Capital Have a Negative Net Worth and Are Operating at a Loss**

47.     As of August 31, 2005, the Pittsford Issuers owed approximately $12.2 million in principle and interest to investors.  As of December 2005, however, they had only $7.1 million in outstanding receivables, which excludes the $2.4 million purported "loan" to Communicate Wireless, the repayment of which is highly unlikely.

48.     During the past year, the Pittsford Issuers have not paid investors any interest and Pittsford III and V have defaulted on paying principal.  In addition, the Pittsford Issuers have also not paid certain investors the full amount of interest and principal due them.

**Outstanding Investor Judgments Have Put Investor Assets Further at Risk**

49.     In June 2005, three Pittsford V promissory note holders obtained and collected judgments in the amounts of $55,827, $67,025, and $161,682 for a total of $284,534 in New York State Supreme Court against Pittsford Mortgage for Pittsford V's defaulting on their promissory notes.

50.     In May and June 2006, 10 investors have obtained judgments totaling $756,496 in New York State Supreme Court against Pittsford Mortgage for Pittsford V's defaulting on principal payments under these investors' promissory notes.  To date, the investors have not collected on the May and June 2006 judgments

51.     In 2004, Pittsford Mortgage offered investors the opportunity to redeem their promissory notes at 70% of the principal.  Investors redeemed approximately

18

$500,000 worth of notes pursuant to this offer.  The next year, in April 2005, Pittsford

Mortgage again offered investors the opportunity to redeem their notes, but this time at

60% of their original principal.   The continued litigation and the haphazard payments to

investors is depleting investor funds to the detriment of the vast majority of Pittsford

Issuers' investors.

**The Defendants Have Made Material Misrepresentations, and Omitted to Disclose**
**Material Facts, to Investors**

52.     In the course of offering and selling notes, ownership units, and other

securities, the Defendants knowingly, or with reckless disregard, omitted to disclose the

following material facts, among others:

      (a)     The Defendants transferred approximately $2.4 million to
           Communicate Wireless, an entity which Tackaberry and Palazzo
           partially-owned and partially-controlled;

      (b)     The payment to Communicate Wireless was not connected to any
           real estate activity and was not secured by any real estate;

      (c)     The Defendants transferred hundreds of thousands of dollars to
           Palazzo.

      (d)     The Defendants merged Pittsford I – V without investor consent,
           and commingled the Pittsford I – V money in one bank account;

      (e)     The Defendants commingled the Jefferson offering proceeds with
           the commingled Pittsford I – V bank account;

      (f)     Pittsford III and V had defaulted under the terms of the notes;

      (g)     The Defendants are in dire financial condition because of, among
           other things, the undisclosed transfers of money to the Defendants;
           and

      (h)     Tackaberry was previously CEO and Chairman of an entity that
           filed for bankruptcy.

53.     Through the conduct described above, and in the course of offering and

selling notes, ownership units, and other securities, the Defendants knowingly, or with

reckless disregard, have made the following misrepresentations and false statements,

among others:

(a)     The Defendants would use the offering proceeds exclusively to
loan money to real estate developers, and the mortgage loans
would be secured by real property;

(b)     Pittsford I – V would retain the Servicing Agent, and that they
would provide the Servicing Agent with a list of investors and their
addresses, as well as periodic financial reports and prompt written
notification of any defaults to promissory note holders; and

(c)     Jefferson's Private Placement Memorandum stated that Jefferson
would deposit investor funds in Jefferson's name and "may not be
commingled with the funds of any Manager, Member, Officer or
any Affiliate thereof."

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act

54.     The Commission realleges and incorporates paragraphs 1 through 53 by

reference as if fully set forth herein.

55.     The Defendants, directly or indirectly, singly or in concert, by use of the

means or instruments of transportation or communication in interstate commerce, or of

the mails, in the offer or sale of securities issued by the Pittsford Issuers, knowingly or

recklessly, have, (a) employed, are employing or are about to employ, devices, schemes

and artifices to defraud; (b) made untrue statements of material fact, or have omitted to

state material facts necessary in order to make statements made, in light of the

circumstances under which they were made, not misleading; and/or (c) engaged, are

engaging and are about to engage in transactions, acts, practices and courses of business

which operated or would have operated as a fraud or deceit upon purchasers of securities

issued by the Pittsford Issuers, including in marketing material, notes, investment contracts, other evidence of indebtedness, and other public statements issued and made by the Defendants.

56.    By reason of foregoing, the Defendants, singly or in concert, directly or indirectly, have violated, are violating, and unless enjoined will again violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## SECOND CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

57.    The Commission realleges and incorporates paragraphs 1 through 56 by reference as if fully set forth herein.

58.    The Pittsford Issuers, Pittsford Capital, Pittsford Mortgage, Pittsford Group, Palazzo, and Tackaberry, directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities issued by the Pittsford Issuers, knowingly or recklessly, have: (a) employed, are employing or are about to employ, devices, schemes and artifices to defraud; (b) made, are making or are about to make untrue statements of material fact, or have omitted, are omitting, or are about to omit to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged, are engaging and are about to engage in transactions, acts, practices and courses of business which operated or would have operated as a fraud or deceit upon purchasers of securities issued by the Pittsford Issuers, including in marketing material, notes, investment contracts, other evidence of indebtedness, and other public statements issued

and made by the Defendants.

59.     By reason of foregoing, the Defendants, singly or in concert, directly or

indirectly, have violated, are violating, and unless enjoined will again violate, Section

10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. §240.10b-5,

promulgated thereunder.

### PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court

grant the following relief:

### I.

An Order temporarily and preliminarily, and a Final Judgment permanently,

restraining and enjoining the Pittsford Issuers, Pittsford Capital, Pittsford Mortgage,

Pittsford Group, Palazzo, and Tackaberry and their agents, servants, employees and

attorneys and all persons in active concert or participation with them, who receive

actual notice of the injunction by personal service or otherwise, and each of them, from

future violations of Section 17(a) of the Securities Act, 15 U.S.C. §§ 77q(a), Section

10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5

thereunder.

### II.

An Order directing the Pittsford Issuers, Pittsford Capital, Pittsford Mortgage,

Pittsford Group, Palazzo, Tackaberry, Latini, Communicate Wireless and Monroe

Wireless and each of their respective agents, banks, debtors, bailees, servants, employees,

and attorneys-in-fact, and those persons in active concert or participation with them who

receive actual notice of said Order by personal service, facsimile, or otherwise, to hold

22

and retain within their control, and otherwise prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal of any of the Pittsford Issuers, Pittsford Capital, Pittsford Mortgage, Pittsford Group, Palazzo, Tackaberry, Latini, Communicate Wireless and Monroe Wireless assets, funds or other properties of any kind wherever situated, and assets over which Pittsford Issuers, Pittsford Capital, Pittsford Mortgage, Pittsford Group, Palazzo, Tackaberry Latini, Communicate Wireless and Monroe Wireless have control by signatory authority or otherwise.

### III.

An Order directing the Pittsford Issuers, Pittsford Capital, Pittsford Mortgage, Pittsford Group, Palazzo, Tackaberry, Latini, Communicate Wireless and Monroe Wireless to file with this Court and serve upon the Commission, within three (3) business days, or within such extension of time as the Commission staff agrees to, a verified written accounting, signed by each defendant under penalty of perjury, setting forth:

(1)     All assets, liabilities and property currently held directly or indirectly by or for the benefit of such Pittsford Issuers, Pittsford Capital, Pittsford Mortgage, Pittsford Group, Palazzo, Tackaberry, Latini, Communicate Wireless and Monroe Wireless or any individuals or entities who have invested money with Pittsford Issuers, Pittsford Capital, Pittsford Mortgage, Pittsford Group, Palazzo, Tackaberry, Latini, Communicate Wireless and Monroe Wireless, including but not limited to bank accounts, brokerage accounts, investments, business interests, loans, lines of credit, and real and personal property wherever situated, describing each asset

and liability, its current location and amount;

(2)    All money, property, assets, and other income received by the Pittsford

Issuers, Pittsford Capital, Pittsford Mortgage, Pittsford Group, Palazzo,

Tackaberry, Latini, Communicate Wireless and Monroe Wireless, or for

their direct or indirect benefit, in or at any time from January 1, 1996 to

the date of the accounting, describing the source, amount, disposition and

current location of each of the items listed;

(3)    All assets, funds, securities, real or personal property transferred to or for

the benefit of the Pittsford Issuers, Pittsford Capital, Pittsford Mortgage,

Pittsford Group, Palazzo, Tackaberry, Latini, Communicate Wireless and

Monroe Wireless or any individuals or entities who have invested money

with the Pittsford Issuers, Pittsford Capital, Pittsford Mortgage, Pittsford

Group, Palazzo, Tackaberry, Latini, Communicate Wireless and Monroe

Wireless in or at any time from January 1, 1996 to the date of the

accounting, and the source, amount, disposition and current location of

such assets, funds, securities, real or personal property;

(4)    All money, property, assets and other income transferred from the

Pittsford Issuers, Pittsford Capital, Pittsford Mortgage, Pittsford Group,

Palazzo, Tackaberry, Latini, Communicate Wireless and Monroe

Wireless, including transfers to any bank account, brokerage account or

other account, or to any individual, or entity, in or at any time from

Jnauary 1, 1996 to the date of the accounting; and

(5)    The names and last known addresses of all bailees, debtors, and other

24

individuals and entities which are currently holding the assets, funds or property of such Pittsford Issuers, Pittsford Capital, Pittsford Mortgage, Pittsford Group, Palazzo, Tackaberry, Latini, Communicate Wireless and Monroe Wireless.

## IV.

An Order appointing temporary and preliminary receivers over the Pittsford Issuers, Pittsford Capital, Pittsford Mortgage, and Pittsford Group.

## V.

An Order permitting expedited discovery.

## VI.

An Order enjoining and restraining each of the Defendants and Relief Defendants and any person or entity acting at their direction or on their behalf, from destroying, altering, concealing, or otherwise interfering with the access of the Commission to relevant documents, books and records.

## VII.

A Final Judgment ordering the Defendants and Relief Defendants to disgorge their ill-gotten gains, plus prejudgment interest, and such other and further amount as the Court may find appropriate.

## VIII.

A Final Judgment ordering each of the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## IX.

Such other and further relief as to this Court deems just and proper.

Dated: New York, New York
     July 14, 2006

By:                          
                 MARK K. SCHONFELD (MS-2798)
                 REGIONAL DIRECTOR
                 SECURITIES AND EXCHANGE
                 COMMISSION
                 3 World Financial Center
                 New York, NY  10281
                 (212) 336-0078
                 Attorney for Plaintiff

Of Counsel:
Helene T. Glotzer
Bruce Karpati
David Stoelting
Justin Arnold

William Estes