UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,           :

                 Plaintiff,           :

          -against-           :

                                :
PITTSFORD CAPITAL INCOME PARTNERS, L.L.C.,:
PITTSFORD INCOME PARTNERS II, L.L.C.,           :
PITTSFORD INCOME PARTNERS III, L.L.C.,           :
PITTSFORD INCOME PARTNERS IV, L.L.C.,           :
PITTSFORD INCOME PARTNERS V, L.L.C,           :  06 Civ 6353 T(P)
JEFFERSON INCOME PARTNERS, L.L.C           :
PITTSFORD CAPITAL, L.L.C., PITTSFORD           :  **DECISION AND ORDER**
CAPITAL MORTGAGE PARTNERS, L.L.C.,           :
PITTSFORD CAPITAL GROUP, INC.,           :
MARK PALAZZO, and EDWARD TACKABERRY,           :

                Defendants,           :
and           :

COMMUNICATE WIRELESS, L.L.C,           :
MONROE WIRELESS, L.L.C., and           :
MICHAEL LATINI,           :
                                :
          Relief Defendants.           :
                                :
-----------------------------------------x

## INTRODUCTION

Movants, Paul A. Graham-Raad and Enid L. Graham-Raad, Marlin B. Potter and Roberta V. Potter, James H. Potter and Roblyn K. Potter, William P. Rollins, Thomas Farrell and Jacqueline S. Farrell, Potter Associates, Inc., Larry J. Sliker, Lawrence M. Reister, Eugene F. Cairo ("Cairo") and Elizabeth Ver Hulst (collectively "Judgment Creditors"), with the exception of Cairo are former investors in defendant Pittsford Income Partners V, L.L.C., having received five-year promissory notes dated between November 3, 1999 and March 31, 2000. Cairo was a former investor in defendant Pittsford Income Partners III, L.L.C., having received a

five-year promissory note dated March 31, 1999. Because the Notes were not paid when they became due, Judgement Creditors filed suits in New York State Supreme Court against defendant Pittsford Capital Mortgage Partners, L.L.C. ("PCMP") as successor-in-interest to the original Issuers. The Hon. Kenneth R. Fischer, J.S.C., rendered judgments in favor of Judgment Creditors between May 10, 2006 and June 26, 2006. Those judgments total $756,496.31.

Judgment Creditors move this Court for an Order terminating its Preliminary Injunction ("Injunction") to allow them to proceed to enforce prior judgments obtained by Judgment Creditors against the assets of PCMP pursuant to New York law. Alternatively, Judgment Creditors request that in any final distribution, they be paid the full amount of their respective judgments in priority to the claims of those creditors whose Notes, claims or remedies against the defendants had not ripened as of the date this action was commenced or who failed to formally pursue those claims under New York law. Plaintiff, Securities and Exchange Commission ("SEC") and the Receiver oppose the motion because it seeks to seize assets that are currently part of the Receivership, which are being held for distribution to all victims of the fraud and not merely the 14 Judgment Creditors.[1] Further, according to the SEC, denying the motion will not prejudice the Judgment Creditors.

For the reasons which follow, Judgment Creditors' motion is

---

[1]The Receiver asserts that while the Judgment Creditors have taken action to enforce their note obligations, which matured before filing this action, there are other investors holding millions in other loans whose notes had not matured or who had not started actions against defendants prior to filing of this suit.

denied.

## DISCUSSION

### I.   Judgment Creditors' Motion Prematurely Seizes Assets Protected by the Injunction

Judgment Creditors assert that the Injunction prevents them from continuing to pursue their legal rights on their own behalf, and ignores the fact that the Judgment Creditors' state law rights and remedies are legally superior to those investors who either failed to pursue their claims, or whose claims or remedies against the defendants had not yet ripened by virtue of the particular terms of the investments. In essence, Judgement Creditors argue that but for the Injunction, they would have availed themselves of the various enforcement and information gathering mechanisms provided by state law so as to discover, secure and liquidate assets for application to their judgments. While well intentioned, Judgment Creditors claim that the effect of the Injunction prevents them from securing the full benefit of their state court judgments, which they obtained through extensive time, effort and thousands of dollars in legal fees. Moreover, any expenses incurred by the Receiver will further reduce the amounts, which would otherwise be available to Judgment Creditors had they been allowed to continue their "self-help" state court remedies.

As held by the court facing a similar situation in SEC v. Credit Bancorp.,Ltd., 93 F.Supp.2d 475, 477 (S.D.N.Y. 2000), the preservation of the receivership estate is paramount. In that case, the district court granted a receiver's motion for stay of a state

3

court action.  In granting the receiver's motion the district court reasoned that "the power to stay competing actions falls within the court's inherent power to prevent interference with the administration of the estate." <u>See</u> <u>id.</u>; <u>see also</u> <u>In re Baldwin-United Corp.</u>, 770 F.2d 328-338-39 (2d Cir. 1985) (Circuit Court affirmed district court's injunction pursuant to All Writs Act, 28 U.S.C. § 1651, against suits in state courts that affect rights of plaintiffs); <u>SEC v. Wencke, et al.</u>, 622 F.2d 1363, 1369 (9th Cir. 1980) ("The power of the district court to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties[.]") The fundamental purpose of establishing a Receivership is to protect the estate property and ultimately return that property to the proper parties.

In this case, granting the relief requested by the Judgment Creditors would defeat this fundamental purpose because only a handful of victims would receive close to full compensation while the pro rata shares available to the hundreds of other victims would be significantly diminished.[2]  Moreover, permitting the Judgment Creditors to seize the assets of PCMP in order to get payment of approximately $756,000, which they assert is due them,

---

[2]Granting the motion would also violate the TRO, the Preliminary Injunction Order and the Amended Preliminary Injunction Order, which mandate that the purpose of the receivership is the preservation of the *status quo* and to prevent piecemeal dissolution of the assets of the Pittsford Entities and the investors.

would make the Judgment Creditors whole to the detriment of the other creditors and remaining investors of PCMP or other defendants. Thus, Judgment Creditors' motion is denied.

## II.   Denial of the Motion Will Not Result in Prejudice to the Judgment Creditors

Judgment Creditors argue that a balancing of interests is required in determining whether a continuation of the stay is justified in this case. See Wencke, 622 F.2d at 1373-74. In this regard, the district court should consider whether refusing to lift the stay preserves the status quo or whether the moving party will suffer substantial injury if it is not permitted to proceed. Id. The Court finds that the stay of all proceedings is justified. The stay preserves the status quo because from the time of the commencement of this action on July 14, 2006, the Receiver took and retained immediate possession and control of all assets and property of the defendants. Since that time, the Receiver has been dutifully managing the assets for the best interests of all investors.

Further, Judgment Creditors have not shown that they will suffer substantial injury if they are not permitted to proceed. While Judgment Creditors secured a state court judgment, there are other investors holding in excess of $10,000,000 in other loans or equity investments whose notes and obligations had simply not matured or had not started an action prior to the filing of this action. Currently, the collectible assets discovered by the Receiver are in the range of $3,000,000 prior to any liens or

5

encumbrances. The Receiver estimates that the "net" available to repay investors will be closer to only $1,500,000 depending on enforceability, closing costs and other factors. Moreover, discovery in this action has concluded and the SEC's summary judgment motion must be filed by January 8, 2007. Accordingly, the Judgment Creditors will be able to make their arguments for preferential treatment at the time the Receivership is completed and prior to the assets being distributed.

Therefore, this Court denies the relief requested by the Judgment Creditors.

**CONCLUSION**

For the reasons set forth above, I hereby deny the Judgment Creditors' Motion to Terminate the Preliminary Injunction and to Permit the Enforcement of the State Court Judgment.


ALL OF THE ABOVE IS SO ORDERED.


                              s/Michael A. Telesca
                              MICHAEL A. TELESCA
                          United States District Judge

Dated:    Rochester, New York
          January 5, 2007