```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,           :
                                              :
                Plaintiff,                    :
                                              :
        -against-                             :
                                              :
PITTSFORD CAPITAL INCOME PARTNERS, L.L.C.     :
PITTSFORD INCOME PARTNERS II, L.L.C.,         :
PITTSFORD INCOME PARTNERS III, L.L.C.,        :
PITTSFORD INCOME PARTNERS IV, L.L.C.,         :
PITTSFORD INCOME PARTNERS V, L.L.C.,          :   06 Civ 6353 T(P)
JEFFERSON INCOME PARTNERS, L.L.C              :
PITTSFORD CAPITAL, L.L.C., PITTSFORD          :   DECISION AND ORDER
CAPITAL MORTGAGE PARTNERS, L.L.C.,            :
PITTSFORD CAPITAL GROUP, INC.,                :
MARK PALAZZO, and EDWARD TACKABERRY,          :
                                              :
                Defendants,                   :
                                              :
---------------------------------------------x
```

## **INTRODUCTION**

The Securities and Exchange Commission ("SEC") filed an application for an Order to Show Cause why defendants Edward Tackaberry ("Tackaberry") and Mark Palazzo ("Palazzo")[1] should not be held in contempt for failing to disgorge and pay prejudgment interest on ill-gotten gains from violating federal securities laws, as mandated almost three years ago by order of this Court. Further, the SEC contends that Tackaberry's contemp warrants an order from the Court requiring Tackaberry to deposit payments in the Registry of the Court. Failing such a deposit within a reasonable time, incarceration is the next step until he attempts to comply with the Court's order. For the following reasons, the SEC's motion to hold Tackaberry in

---

[1] On March 23, 2010, the SEC's motion for contempt against Palazzo was withdrawn without prejudice. Accordingly, the current motion for contempt relates only to Tackaberry.

contempt is granted and in light of such contempt findings, Tackaberry must make payments to the Court's registry within thirty (30) days.[2]

## BACKGROUND

The SEC previously filed a motion for summary judgment, which the Court granted. In granting the motion, the Court found that Tackaberry and Palazzo "acted with a high degree of scienter; they were trained securities professionals who repeatedly made false and misleading statements and omissions to the investors....They knew what they were doing and they did it with fraudulent intent." See SEC v. Pittsford Capital Income Partners, L.L.C. et al., 2007 WL 2455124 at *17 (W.D.N.Y. August 23, 2007), aff'd, 2008 WL 5435580 (2d Cir. Dec. 31, 2008). The procedural and factual background of this case is set forth in that Decision and Order dated August 23, 2007 ("August 23 Decision"). Accordingly, familiarity with that decision is assumed. Thus, the Court will not repeat all the facts of the prior proceeding and will only address the most pertinent information as it relates to this motion for contempt. For purposes of the instant motion it is sufficient to note the following facts.

The SEC commenced this action against Tackaberry and Palazzo on July 14, 2006, alleging violations of various provisions of federal securities law arising out of the alleged use of investor funds for improper purposes by making secret loans, commingling investor funds

---

[2] Tackaberry's "failure to comply with the final judgment is a harm of substantial magnitude, undermining the deterrent effect of SEC enforcement actions and the enforcement actions and the enforceability of court orders." SEC v. Margolin, 1996 WL 447996 at *5 (S.D.N.Y.1996).

without disclosure and other material misrepresentations and omissions. On the same day the complaint was filed, this Court granted the SEC's application for a temporary restraining order freezing the assets at issue pending a determination of its application for a preliminary injunction. In addition, the Court appointed a Receiver. As stated above, the Court granted summary judgment in favor of the SEC on August 23, 2007. The Final Judgment as to Tackaberry and Palazzo, entered on August 30, 2007, ordered that both defendants are jointly and severally liable for disgorgement of $11,725,294.92, plus prejudgment interest of $14,028,728.07 for a total of $25,754,022.90. In addition, the Final Judgment authorizes the SEC to enforce the payment obligation "by moving for civil contempt and/or through other collection procedures authorized by law[.]" See Dkt. # 112. After three years of diligent effort on the part of the Receiver in liquidating available assets, he submitted a proposed plan to the Court for distributing these assets to the victims of the fraud.

On November 16, 2009, the Court approved the plan, which will return only 7.86% of the amount owed to each investor. See Dkt. # 138. The SEC claims that the funds being distributed by the Receiver do not include even one penny from Tackaberry. Despite repeated demands and an ability to make at least partial payments, Tackaberry has refused to make even a token payment in the almost three years since the entry of the Final Judgment. The SEC contends that this conduct demonstrates a failure to recognize the consequences of his

3

actions, a disregard for his former clients whose money he stole[3] and a blatant contempt for the Final Judgment entered by this Court. In addition, the SEC claims that Tackaberry is involved in a new promissory note scheme similar to the Pittsford Capital fraud wherein he has been raising money for several start-up companies with no operating history and offering promissory notes with an 8% return.

## DISCUSSION

### I. Applicable Standards on a Motion for Civil Contempt

It is a firmly established principal that federal courts possess the inherent power to punish for contempt. See D'Orange v. Feely, 959 F.Supp. 631, 634-35, 637 (S.D.N.Y.1997); see also Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates"); Young v. United States ex rel. Vuitton et Fils, S.A., 481 U.S. 787, 795 (1987); Abrams v. Terry, 45 F.3d 17 (2d Cir.1995). The standards applicable to a motion for civil contempt are well settled and require only brief review. As the Court of Appeals for the Second Circuit explained in EEOC v. Local 638, a party may be held in contempt for failure to comply with a court order if the moving party shows by clear and convincing evidence that "the order being enforced is clear and unambiguous, the proof of

---

[3] Tackaberry and Palazzo defrauded approximately 180 investors, mainly retirees from the Rochester area as well as senior citizens, of more than $11 million, robbing many of them of their life savings. By the time this action was commenced and the assets frozen in July 2006, both defendants had spent most of the $15 million raised from investors. Accordingly, the Receiver's distribution of those assets have resulted in the victims recouping less than 8% of their losses.

noncompliance is clear and convincing, and the defendant [] ha[s] not been reasonably diligent and energetic in attempting to accomplish what was ordered." 753 F.2d 1172, 1178 (2d Cir. 1985); see also Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc., 369 F.3d 645, 655 (2d Cir.2004); King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir.1995).

To meet this initial burden, the plaintiff, SEC need only present a prima facie case (see United States v. Rylander, 460 U.S. 752, 755 (1983)) and it need not be established that the violation was willful. See Donovan v. Sovereign Sec. Ltd., 726 F.2d 55, 59 (2d Cir.1984); see also SEC v. Universal Express, Inc., 546 F.Supp.2d 132, 134 (S.D.N.Y.2008); Perez v. Danbury Hosp., 347 F.3d 419, 423-24 (2d Cir.2003); Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir.1995); New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1351 (2d Cir.1989). Once the initial burden is met by the SEC, the burden shifts to the defendant to come forward with evidence showing "categorically and in detail" the reasons he is unable to comply with the court's order. See Rylander, 460 U.S. at 755. Here, defendant Tackaberry who claims that he is unable to pay the judgment, "bears the burden of producing evidence of his inability to comply" with the disgorgement order. See Huber, 51 F.3d at 10, citing Rylander, 460 U.S. at 757. Tackaberry's "burden is to establish his inability clearly, plainly, and unmistakably." Id. In other words, Tackaberry must clearly establish "that compliance is impossible." Rylander, 460 U.S. at 757.

If Tackaberry "offers no evidence as to his inability to comply...or stands mute," he fails to meet that burden. Huber, 51 F.3d at 10 (quotations omitted). As a result, Tackaberry must demonstrate his inability to comply "categorically and in detail." See Rylander, 460 U.S. at 755. Further, proof that Tackaberry cannot pay the entire amount would not absolve him from paying as much as is possible to pay under the circumstances: "When an order requires a party to pay a sum certain, a mere showing that the party was unable to pay the entire amount by the date specified is insufficient to avoid a finding of contempt. When a party is absolutely unable to comply due to poverty or insolvency, inability to comply is a complete defense. [Citation omitted.] Otherwise, the party must pay what he or she can." SEC v. Musella, 818 F.Supp. 600, 602 (S.D.N.Y.1993) (citations omitted). The court will presume a present ability to comply with an order where at some point in the past a defendant could have complied with that order. See SEC v. Princeton Econ. Int'l Ltd., 152 F.Supp.2d. 456, 459 (S.D.N.Y.2001).

Once contempt has been established, a district court has "broad discretion to fashion an appropriate coercive remedy based on the nature of the harm and the probable effect of alternative sanctions[.]" EEOC v. Local 28 of Sheet Metal Workers Int'l Ass'n, 247 F.3d 333, 336 (2d Cir.2001) (citations omitted). In determining an appropriate sanction for civil contempt, a court must consider: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested

sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction." Dole Fresh Fruit Co. v. United Banana Co., 821 F.2d 106, 110 (2d Cir.1987); see also SEC v. Bremont, 2003 WL 21398932 at *7 (S.D.N.Y.2003). Remedies ranging from the use of an escrow requirement to incarceration are clearly within the Court's discretion. See e.g. Local 28, 247 F.3d at 336.

## II. Contempt Motion Against Tackaberry

As to the first prong, "[a] 'clear and unambiguous' order is one that is 'specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'" Medallic Art Co., Ltd. v. Novus Mktg., Inc., 2003 WL 22053130 at *1 (S.D.N.Y. 2003) (quotations omitted); see also Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp., 2006 WL 2128785 at *3 (S.D.N.Y.2006) ("Any ambiguities in an order should be read in favor of the person charged with contempt"). As explained by the Court of Appeals for the Second Circuit in King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir.1995):

> A clear and unambiguous order is one that leaves "no uncertainty in the minds of those to whom it is addressed," Hess v. New Jersey Transit Rail Operations, Inc., 846 F.2d 114, 116 (2d Cir.1988), who "must be able to ascertain from the four corners of the order precisely what acts are forbidden," see Drywall Tapers, Local 1974 v. Local 530, Operative Plasterers Int'l Ass'n, 889 F.2d 389, 395 (2d Cir.1989)....

Accord Equal Employment Opportunity Comm'n v. N.Y. Times Co., 196 F.3d 72, 81 (2d Cir.1999); United States v. District Council of New York City, 409 F.Supp.2d 439, 450 (S.D.N.Y.2006); U2 Home Entm't,

Inc. v. Hong Wei Int'l Trading, Inc., 2005 WL 3766976 at *6 (S.D.N.Y.2005). Here, the Final Judgement was clear and unambiguous in its order to pay the disgorgement and prejudgment interest and in its command not to violate the anti-fraud provisions of the securities laws.

With respect to the second prong, "[i]n the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." Levin v. Tiber Holding Corp., 277 F.3d 243, 250 (2d Cir.2002); see also Ceslik v. Miller Ford, Inc., 2006 WL 1582215 at *1 (D. Conn.2006); Matrix Essentials v. Quality King Distribs., Inc., 346 F.Supp.2d 384, 391 (E.D.N.Y.2004). In this case, it is undisputed that Tackaberry failed to make payments on the disgorgement and prejudgment interest debt. In addition, it cannot be disputed that Tackaberry has had the ability to pay but he has chosen not to do so. Tackaberry contends that he has had little or no ability to make payments on the Final Judgment. He adds that he has been deposed by the SEC twice and the SEC has known about his assets since either February 14, 2008 and no later than January 2009. He further argues that the SEC could have garnished his wages since this is a device available to them.

The SEC claims that Tackaberry has not been as forthcoming with information as he would like the Court to believe. For instance, Tackaberry claims that he has "fully cooperated with the SEC." See Tackaberry Decl. ¶21. However, he failed to disclose until November

2009 that he had been depositing funds in his wife's bank account since July 2006. With regard to Tackaberry's house, he claims that the SEC has prevented him from selling the house. See id., ¶24. SEC disputes this and claims that there is no evidence that Tackaberry ever listed or even tried to sell the house. However, there is evidence that he transferred the house in his wife's name in 2004 when the Pittsford Capital scheme was unfolding.

Moreover, Tackaberry seeks to distance himself from his website (www.fingerlakesfinancing.com) which was still up as of December 11, 2009 and features a photograph of Tackaberry as he touts his expertise in "developing special opportunities," and proclaims that "[o]ver the past 30 years...Tackaberry [has] been involved in 264 transactions with capital invested of $432 million." See Stoelting Decl., ¶7. It is undisputed that Tackaberry had the website up as of December 11, 2009 and only took it down after this motion for contempt was filed. Prior to the motion, even with the Final Judgment, which clearly and unambiguously indicated that he was not to violate the anti-fraud provisions of the securities laws and the August 23 Decision that found that he was a "trained securities professional[] who repeatedly made false and misleading statements and omissions to the investors," he never took down his website, which remained accessible to all. Further, the Court finds based on the evidence presented that Tackaberry continues to be paid $6,000 per month, earned substantial consulting fees in 2007 and made substantial transfers to other companies. In addition, he received

9

$34,000 from the sale of corporate notes in 2008, none of which was paid to the Court.

The SEC also provided the declaration of David Weaver ("Weaver Declaration") to the Court as well as documents in support of the declaration. The SEC argues that the Weaver Declaration and its supporting documentation establish that Tackaberry is involved in a new promissory note scheme. Tackaberry responded with his own affidavit and the affidavit of other individuals who were allegedly involved in the scheme disputing Weaver's statements. The SEC thereafter requested that an evidentiary hearing be held to allow the SEC to present its documentary and testimonial evidence. In addition, the SEC filed a supplemental memorandum of law requesting that the Court prohibit certain individuals who provided affidavits on behalf of the defendants from contacting or communicating with potential witnesses of the SEC as there was allegedly witness intimidation occurring. With respect to the promissory note scheme, Tackaberry asserts that "I have not solicited or attempted to solicit investors[.]" See Tackaberry Decl., ¶4. However, Tackaberry has not provided a single document to support his claim. On the contrary, the Weaver Declaration is not only supported by contemporaneous documents but also specific details of Tackaberry's involvement.

Turning to the third and final prong, there can be no finding of contempt if it has been shown that the alleged contemnor has been "reasonably diligent and energetic in attempting to accomplish what was ordered." Local 638, 753 F.2d at 1178; see also Powell v. Ward,

643 F.2d 924, 931 (2d Cir.1981) (same); Aspira of N.Y., Inc. v. Bd. of Educ., 423 F.Supp. 647, 654 (S.D.N.Y.1976) ("It is a sufficient defense...if a defendant...has in good faith employed the utmost diligence in discharging his responsibilities"). Here, the lack of any payment made by Tackaberry pursuant to the Final Judgment, despite the evidence of his ability to pay at least a portion of the sums due is clear and convincing evidence that Tackaberry has not been "diligent and energetic" in complying with the Court's order.

## CONCLUSION

For the foregoing reasons, the SEC's motion to hold Tackaberry in contempt is granted. In light of such contempt findings and consistent with this Order, Tackaberry must make payments to the Court's registry within thirty (30) days of the date of this Order. Tackaberry is duly forewarned that his failure to comply with this Order will lead to this Court considering other remedies to ensure enforcement, including possible incarceration.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:  Rochester, New York
        May 20, 2010